```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:                      │
│ DATE FILED:    7/31/13      │
└─────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JUAN R. MOSQUERA BILAN,                       :

                              Plaintiff,       :        REPORT AND
                                               :        RECOMMENDATION
                                               :
                                               :        11 Civ. 5509 (RJS) (JLC)
          -v.-                                 :
                                               :
WARDEN DAVIS, *et. al.*,                       :
                                               :
                              Defendants.      :
------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Richard J. Sullivan, United States District Judge:**

Plaintiff Juan R. Mosquera Bilan brings this action under 42 U.S.C. § 1983 for alleged

violations of his rights under the First, Fourth, and Fourteenth Amendments to the United States

Constitution during his incarceration at the George R. Motchan Detention Center ("GMDC") on

Rikers Island. He contends that Warden J. Davis, Captain McKenzie, Correction Officer J.

Roberts, Correction Officer Fernandez, Correction Officer Aikhuele, Captain Penick, and

Captain Washington (collectively "Defendants") used excessive force against him, were

deliberately indifferent to his medical needs, and retaliated against him by changing his housing

assignment after he filed an incident report regarding the alleged excessive force used against

him. Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules

of Civil Procedure. For the reasons discussed below, I recommend that Defendants' motion be

granted.

# I. <u>BACKGROUND</u>

A.    **Facts**

Bilan is currently incarcerated at Five Points Correctional Facility ("Five Points") in

Romulus, New York. (*See* Declaration of Assistant Corporation Counsel Shawn Raymond

Clark, in Support of Defendants' Motion for Summary Judgment, dated December 14, 2012

("Clark Decl.") (Dkt. No. 39), Ex. F (Deposition Transcript of Juan R. Mosquera Bilan, dated

June 22, 2012 ("Bilan Tr."), at 34)). He initially filed this action *pro se*, but has been represented

by counsel since February 2012. (Dkt. No. 23).[1]

Prior to his incarceration at Five Points, Bilan was in the custody of the New York City

Department of Correction as a pre-trial detainee and was housed at GMDC for approximately

one year. (Defendants' Statement Pursuant to Local Rule 56.1, dated December 14, 2012

("Defs. 56.1") (Dkt. No. 41), at ¶ 3; Plaintiff's Statement Pursuant to Local Rule 56.1, dated

February 15, 2013 ("Pl. 56.1") (Dkt. No. 48), at ¶ 3).[2] Bilan's claims arise from an incident at

---

[1] Stuart Birbach, Esq. filed a notice of appearance on behalf of Bilan on February 15, 2012 (Dkt. No. 23), approximately ten months before Defendants filed the pending motion.

[2] The undisputed facts are set forth herein. These facts are drawn primarily from the Defendants' Statement of Material Facts made pursuant to Local Civil Rule 56.1, the Clark Declaration with its attached exhibits (including excerpts of Bilan's deposition), and the Complaint. I note that Bilan's submission is procedurally deficient. While Bilan filed a counter-statement as required by Local Civil Rule 56.1(b), he failed to support his statement with citations to admissible evidence as required by Local Civil Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)"). However, "[a] district court . . . has broad discretion to determine whether to overlook a party's failure to comply with local court rules [,] and, thus, it may in its discretion opt to conduct an assiduous review of the record[.]" *Desclafani v. Pave-Mark Corp.*, 07 Civ. 4639 (HBP), 2008 WL 3914881, at *1 n.1 (S.D.N.Y. Aug. 22, 2008) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)) (internal quotation marks omitted). Because of the limited record in this case and because the material facts are

GMDC on November 5, 2010. On that day, two of Bilan's friends came to visit him at GMDC and Bilan spent about an hour talking with them in the Inmate Visiting Area. (Defs. 56.1 ¶ 4; Pl. 56.1 ¶ 4; Bilan Tr. at 40). After the visitation period was over, correction officers attempted to conduct a search of each prisoner in the visiting area waiting room. (Defs. 56.1 ¶ 6; Pl. 56.1 ¶ 6). However, an unidentified inmate, who is not a party to this action (the "non-party inmate"), refused to remove his socks. (Defs. 56.1 ¶ 7; Pl. 56.1 ¶ 7; Bilan Tr. at 47). This lack of cooperation from the non-party inmate led to an argument and then a physical struggle between the non-party inmate and an unidentified correction officer. (Defs. 56.1 ¶ 8; Pl. 56.1 ¶ 8; Bilan Tr. at 47-50).[3] Bilan asserts that the correction officer grabbed the non-party inmate from behind by placing both arms under the inmate's armpits and around his neck. (Bilan Tr. at 47-48). The non-party inmate continued to struggle and tried to force the officer away from his back. (Bilan

---

readily apparent from the parties' submissions, I recommend that the Court exercise this discretion "to overlook" Bilan's failure to comply with the Local Civil Rules and review the record independently. *Id. See also Doe v. Nat'l Bd. of Podiatric Med. Exam'rs*, 03 Civ. 4034 (RWS), 2005 WL 352137 at *2 n.4 (S.D.N.Y. Feb. 15, 2005) (overlooking parties' failure to comply with Local Civil Rule 56.1(d) where record was "relatively compact"). *But see Liles v. New York City Dep't of Educ.*, 516 F. Supp. 2d 297, 308-09 (S.D.N.Y. 2007) (court deems admitted moving party's facts to the extent supported by accurate citations to admissible evidence in light of non-moving party's failure to comply with Local Rule 56.1(b) and (d)); *Dunkin' Donuts, Inc. v. Bar Donut LLC*, 242 F. Supp. 2d 296, 298-99 (S.D.N.Y. 2003) (facts deemed admitted because non-moving party did not include citations to evidence in Rule 56.1 statement).

[3] In his deposition, Bilan testified that after the visitation period was over but prior to the conflict with the non-party inmate, there was an unrelated (and unexplained) conflict between another prisoner and several correction officers. As a result of this conflict, Bilan and approximately 25 other inmates were left in the visiting area waiting room for about five minutes while correction officers took the uncooperative inmate away. (Bilan Tr. at 45-46). The conflict with the non-party inmate occurred shortly thereafter, when the correction officers returned to the visiting area to conduct the post-visit searches. Bilan's deposition testimony suggests that a large number of correction officers took part in the post-visit searches due to the conflict that had just occurred in the visiting area. (*See* Bilan Tr. at 46-47).

Tr. at 49). Bilan testified that as the conflict escalated, between five and seven other correction officers "jump[ed] on" the non-party inmate and started "hitting him." (Bilan Tr. at 50).

According to Bilan, he was standing just to the right of the struggle between the non-party inmate and the correction officers. (Bilan Tr. at 48). However, Bilan could not see what was happening because correction officers had ordered Bilan and the other prisoners in the waiting area to stand facing the wall with their hands up. (Bilan Tr. at 46; *see also* Complaint under the Civil Rights Act, 42 U.S.C. § 1983, dated July 26, 2011 ("Complaint" or "Compl.") (Dkt. No. 2) at 5)).[4] Thus, it was "impossible for [Bilan] to see what was going on [behind him]." (Compl. at 6-7). The struggle eventually spilled over to where Bilan was standing and he alleges that he was struck in the lower back near his left hip. (Bilan Tr. at 50; Compl. at 5). Bilan fell to the floor, and alleges that he was then hit in the shoulder. (Compl. at 5).

The parties do not agree as to whether the person who allegedly struck Bilan can be identified. Bilan contends that there were between 10 and 15 correction officers in the visiting area waiting room, including Defendants Captain McKenzie ("McKenzie"), Officer Fernandez ("Fernandez"), and Officer Aikhuele ("Aikhuele"). (Bilan Tr. at 46). In his Complaint, Bilan does not identify the person who struck him; rather, he asserts that he was suddenly kicked from behind, and he saw that Fernandez was the officer standing closest to him. (Compl. at 5). However, Bilan is more definitive in both his deposition and in his opposition papers to the motion, claiming that it was Fernandez who struck him. (Plaintiff's Memorandum of Law in Opposition to Summary Judgment Motion, dated February 15, 2013 ("Pl. Mem.") (Dkt. No. 49) at 5; Bilan Tr. at 71). In contrast, Defendants argue that Bilan has failed to demonstrate that

---

[4] Bilan's *pro se* Complaint includes a three-page "Statement of Facts," which does not contain page numbers or numbered paragraphs. Consequently, for ease of reference, citations to the Complaint refer to the ECF page number.

Fernandez was personally involved in the alleged use of force. (*See* Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, filed December 14, 2012 ("Defs. Mem.") (Dkt. No. 40), at 5-6; *see also* Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment, dated March 1, 2013 ("Defs. Reply Mem.") (Dkt. No. 51), at 4-5).

Following the incident, Bilan told McKenzie that he was experiencing sharp pain in his lower back and could not get up off the floor. (Bilan Tr. at 70). McKenzie and Officer Roberts ("Roberts") contacted the facility's medical clinic, and within a few minutes of the call, clinic staff arrived and transported Bilan to the clinic on a stretcher. (Defs. 56.1 ¶¶ 9-10; Pl. 56.1 ¶¶ 9-10; Bilan Tr.at 71-72, 76). Bilan was treated at the clinic by Dr. Brown, but it is unclear exactly what treatment Bilan received. (*See* Bilan Tr. at 71-72, 76). A nurse at the clinic also gave Bilan pills for his pain. (Bilan Tr. at 76, 78). After Bilan was treated at the clinic, he was able to walk and returned to his housing area. (Defs. 56.1 ¶ 11; Pl. 56.1 ¶ 11; Bilan Tr. at 78).

Bilan testified at his deposition that he has continued to experience back pain in the months following the incident. (Bilan Tr. at 81, 87). The cause of Bilan's back pain is disputed. Bilan alleges that he has received conflicting medical reports from different doctors, including one which diagnosed him with a fracture. (*See* Bilan Tr. at 87). Bilan also asserts that at least one doctor recommended surgery after viewing his MRI results, and this recommendation was never acted on. (Pl. Mem. at 8; Bilan Tr. at 87). Defendants assert that some or all of Bilan's back problems are the result of a 2007 car accident. (Defs. 56.1 ¶ 1-2; *see also* Pl. 56.1 ¶ 1-2; Bilan Tr. at 18, 20). Defendants also point out that when Bilan was most recently treated at Bellevue Hospital, he was diagnosed with arthritis. (Defs. 56.1 ¶ 13; *see also* Pl. 56.1 ¶ 13; Bilan Tr. at 81, 87).

5

On November 9, 2010, four days after the incident, Fernandez allegedly notified Bilan that he was being moved to a different housing unit. (Compl. at 7). Bilan alleges that he was moved to "Crypts Gang House" in retaliation for having filed a report about the incident. (Compl. at 7; *see also* Pl. 56.1 ¶ 15).

## B.   Procedural History

On July 26, 2011, while proceeding *pro se*, Bilan filed his complaint against Defendants. (Dkt. No. 2). Defendants filed two separate answers: Defendants Aikhuele, Davis, Fernandez, and Roberts filed their answer on November 30, 2011 (Dkt. No. 16), while Defendants McKenzie, Penick, and Washington filed their answer on December 21, 2011 (Dkt. No. 19). [5]

As discussed above, Bilan retained counsel in February 2012 and has been represented since that time. (Dkt. No. 23). Following the close of discovery, Defendants moved for summary judgment on December 14, 2012. (Dkt. No. 38). Bilan filed opposition papers to Defendants' motion on February 15, 2013. (Dkt. No. 49). Defendants filed a reply on March 1, 2013. (Dkt. No. 51).

---

[5] In his Complaint, Bilan also named the New York City Department of Correction and Correction Officers Vadoo and Maldanado as defendants. (*See* Compl. at 1). The Department of Correction was dismissed from this action because an agency of the City of New York is not an entity that can be sued. (*See* Order dated September 21, 2011 (Dkt. No. 7), at 2). Bilan failed to serve either Vadoo or Maldanado with the Summons and Complaint in accordance with Rule 4 of the Federal Rules of Civil Procedure and the time to have done so has long passsed; accordingly, this Report and Recommendation does not address the claims against them, and to the extent they are deemed to be defendants they may be properly dismissed under Fed. R. Civ. P. 4(m). (*See* Waiver of Service of Summons Unexecuted, dated September 22, 2011 (Dkt. No. 9)).

## II. <u>DISCUSSION</u>

### A.   Standard of Review

Defendants have moved for summary judgment under Rule 56 of the Federal Rules of

Civil Procedure.  Under Rule 56, summary judgment may be granted when the record

demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986).  A dispute of fact is material if it "might affect the outcome of the suit

under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The

evidence of the party opposing summary judgment is 'to be believed, and all justifiable

inferences are to be drawn in [that party's] favor.'" *Graham v. Henderson*, 89 F.3d 75, 79 (2d

Cir. 1996) (quoting *Anderson*, 477 U.S. at 255); *see also Terry v. Ashcroft*, 336 F.3d 128, 137

(2d Cir. 2003).

The moving party bears the initial burden of establishing that there are no genuine

disputes as to any material fact. *See* Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 323-25.  If

the moving party meets its initial burden, the nonmoving party must then cite specific facts in the

record to establish that there are material disputes of fact requiring a trial. *See Wright v.

Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998) (citing *Celotex Corp.*, 477 U.S. at 322).  To defeat

summary judgment, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986).  A party opposing summary judgment "is not entitled to rely solely on

the allegations of [his] pleading, but must show that there is admissible evidence sufficient to

support a finding in [his] favor on the issue that is the basis for the motion." *D'Attore v. City of

New York*, No. 10 Civ. 6646 (WHP), 2013 WL 1180395, at *3 (S.D.N.Y. Mar. 15, 2013)

(quotation omitted).  Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  However, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315 (2d Cir. 2006) (internal quotation marks and citation omitted).

## B.   Excessive Force Claim

### 1.   Applicable Standards

42 U.S.C. § 1983 provides a right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution."  "'The right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment.'" *Johnson v. City of New York*, No. 09 Civ. 4685 (PGG), 2011 WL 1044852, at *3 (S.D.N.Y. Mar. 18, 2011) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)).  The Second Circuit applies the same standard for excessive force claims brought under the Eighth Amendment and the Fourteenth Amendment.  *See, e.g., Santiago v C.O. Campisi Shield No. 4592*, 91 F. Supp. 2d 665, 672-73 (S.D.N.Y. 2000) ("Although an excessive force claim by a pre-trial detainee is governed by the due process clause of the Fourteenth Amendment . . . the Second Circuit applies the same standard to all excessive force claims, whether raised by a prisoner under the Eighth Amendment, or by a pre-trial detainee under the Fourteenth Amendment." (citing *Walsh*, 194 F.3d at 48; *Bell v. Wolfish*, 441 U.S. 520, 535 (1979))).  "Whenever prison officials stand accused of using excessive physical force . . . the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm." *Hudson v. McMillan*, 503 U.S. 1, 6-7 (1992).

An excessive force claim "has two components–one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *Hudson*, 503 U.S. at 7-8; *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)). Therefore, courts considering a prisoner's excessive force claim must address (1) whether "'the officials act[ed] with a sufficiently culpable state of mind'" and (2) "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)). These two components are described below.

a. <u>Subjective Element</u>

"The subjective element is that the defendant must have had the necessary level of culpability, shown by actions characterized by 'wantonness.'" *Blyden*, 186 F.3d at 262 (citing *Wilson,* 501 U.S. at 298-99). "This inquiry turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and courts should examine the circumstances alleged in making a determination. *Perry v. Stephens*, 659 F. Supp. 2d 577, 581 (S.D.N.Y. 2009) (citing *Blyden*, 186 F.3d at 262) (internal quotation marks omitted). "The use of the terms 'maliciously and sadistically' is not a limit on liability for uses of force that are otherwise in bad faith, but rather only a characterization of all 'bad faith' uses of force." *Santos v. New York City Dept. of Correction*, 08 Civ. 8790 (GBD) (THK), 2010 WL 1142066, at *7 (S.D.N.Y. Feb. 25, 2010), Report and Recommendation, *adopted by* 2010 WL 1142065 (S.D.N.Y. Mar. 25, 2010) (citing *Hudson*, 503 U.S. at 7) (additional internal quotation marks omitted). The subjective element considers whether the force was used in line with a legitimate penological objective and "[w]here no legitimate law enforcement or penological

purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Santos*, 2010 WL 1142066, at *7 (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997)).

   b. <u>Objective Element</u>

  "To satisfy the objective component [of an excessive force claim], an inmate must show that 'the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" *Rodriguez v. City of New York*, 802 F. Supp. 2d 477, 481 (S.D.N.Y. 2011) (quoting *Hudson*, 503 U.S. at 8). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Wright*, 554 F.3d at 269 (quoting *Hudson*, 503 U.S. at 9). Rather, *de minimis* uses of physical force, so long as the force is not of a sort "repugnant to the conscience of mankind," are not prohibited by the Eighth Amendment. *Walsh*, 194 F.3d at 48 (citing *Hudson*, 503 U.S. at 9-10). In assessing whether the use of force rises to the level of an Eighth Amendment violation, the extent of the injury suffered is relevant to the Eighth Amendment inquiry insofar as it bears on the amount of force applied. *Rodriguez*, 802 F. Supp. 2d at 481 (citing *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010)).

   c. <u>Personal Involvement</u>

  It is well-established in the Second Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (internal quotation marks and citation omitted). Further, as a threshold matter, "'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Inesti v. Hicks*, No. 11 Civ. 2596 (PAC) (AJP), 2012 WL 2362626, at *10 (S.D.N.Y. June 22, 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)), Report and Recommendation, *adopted by*

2012 WL 3822224 (S.D.N.Y. Sept. 4, 2012).

> 2. <u>Bilan has not Alleged, Much Less Identified Any Admissible Evidence, That
> Any of the Defendants (Except for Fernandez) Were Personally Involved in the
> Alleged Force</u>

Bilan only identifies one officer, Fernandez, who is alleged to have played any role in the

force used against him. As Bilan has not pointed to any admissible evidence that establishes the

personal involvement of any defendants aside from Fernandez, summary judgment should be

granted and the excessive force claim dismissed as to Defendants Davis, McKenzie, Roberts,

Aikhuele, Penick, and Washington.[6]

As to Fernandez, Bilan's allegations are somewhat unclear.  In the Complaint, Bilan does

not identify who struck him, and merely asserts that Fernandez was the officer standing closest to

him when he looked up from the floor. (Compl. at 5).  In his papers opposing the motion for

summary judgment, Bilan affirmatively identifies Fernandez as the officer who struck him (Pl.

Mem. at 5), but provides no citation to any evidence in the record to support this version of

events.  Because Bilan offers no admissible evidence as to who struck him other than his own

testimony, and Bilan previously alleged in his Complaint that he could not identify who was

responsible for the force used, he has failed to present sufficient evidence from which a

reasonable jury could conclude that Fernandez was personally involved in the alleged force. *See,

e.g., Nunez v. Goord*, 172 F. Supp. 2d 417, 434 (S.D.N.Y. 2001) (granting summary judgment

because plaintiff failed to present evidence establishing defendants' personal involvement).[7]

---

[6] To the extent Captain McKenzie was involved in the incident, her only alleged role by Bilan's
own account was in calling a halt to the force used against the non-party inmate. (*See* Bilan Tr.
at 69-70 (explaining Captain McKenzie told other officers to stop hitting non-party inmate)).

[7] It is well-settled that, on a motion for summary judgment, a court "should not weigh evidence
or assess the credibility of witnesses." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.
1996) (citing *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994)).  However, the Second
Circuit has recognized that, "in the rare circumstance where the plaintiff relies almost

However, even assuming that Bilan *could* demonstrate that Fernandez was personally involved, Bilan's excessive force claim against Fernandez fails for other reasons, as discussed below.

### 3.   Fernandez Did Not Act With the Subjective Intent Necessary for an Excessive Force Claim

#### a.   Fernandez Lacked Subjective Intent as to Bilan

In his deposition, Bilan described the November 5 incident as a chaotic situation in which "the [non-party] inmate was kind of twisting around and struggling and forcing the officer to get [away] from his back, away from his back." (Bilan Tr. at 49). There is no dispute that someone struck Bilan only after the conflict between the officers and the non-party inmate spilled over to where Bilan was standing. In light of the attending circumstances, Bilan candidly acknowledges in the Complaint that he does not believe the force used against him was intentional. (*See* Compl. at 6 (Bilan's statement in incident report regarding use of force that, "[he] said [it] probabl[y] was no[t] intentional because the fight was not with [him] . . . .").

Given Bilan's allegations, he has not met the threshold requirement of asserting facts, much less presented any evidence, to suggest that Fernandez's actions were "characterized by

---

exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks and citations omitted). Likewise, in *Rojas v. Roman Catholic Diocese of Rochester*, the Second Circuit affirmed the district court's decision to grant defendant's motion for summary judgment. 660 F.3d 98 (2d Cir. 2011) (per curiam), *cert. denied,* 132 S. Ct. 1744 (2012). In that case, evidence submitted by plaintiff in opposition to the motion directly contradicted factual allegations made in her pleading. *See Rojas,* 660 F.3d at 103-06. The Circuit determined that the trial court did not err when, after the plaintiff failed to explain her inconsistent remarks, it granted summary judgment on the basis that no reasonable jury could credit the plaintiff's latter, inconsistent allegations. *See id.* at 106. Here, excerpts from Bilan's deposition, the only evidence before the Court in support of his claims (and not even offered by Bilan), are inconsistent with his Complaint, and he does not offer any plausible explanation for his contradictory testimony. Assessed in this light, as permitted under *Jeffries* and *Rojas*, his proffered evidence does not afford a reasonable jury a basis to find in his favor.

wantonness . . . ." *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000) (quoting *Blyden*, 186 F.3d at

262). Bilan does not argue that Fernandez intended to use force against him or had any intention

of harming him. *See, e.g.*, *Headley v. Fisher*, No. 06 Civ. 6331 (PAC) (KNF), 2008 WL

1990771, at *1, *4-5 (S.D.N.Y. 2008) (plaintiff's allegation that correction officer grabbed his

shoulder and shoved him into his cell—thereby causing plaintiff to bump into a locker located

inside cell—did not give rise to excessive force claim because "[plaintiff] failed to allege any

facts from which it could be inferred that [defendant's] conduct was characterized by wantonness

. . ."). As Bilan has not presented any evidence of wantonness, it follows that no reasonable jury

could conclude that Fernandez acted with a malicious intent to harm him.[8]

      b.    Subjective Intent as to the Non-Party Inmate

      The excessive force inquiry does not end with assessing Fernandez's intentions towards

Bilan, however, because Fernandez's actions towards the non-party inmate may also bear on his

culpability. *See Santos*, 2010 WL 1142066, at *5. In *Santos*, the plaintiff asserted that he was

injured by accident, after a prison guard attempted to assault another prisoner with a fire

extinguisher, but ended up spraying the plaintiff in the face instead. *Santos*, 2010 WL 1142066,

at *1. The court in *Santos* noted that "there are a limited number of cases that employ excessive-

---

[8] Bilan has also not provided sufficient evidence to demonstrate that the objective element of the excessive force inquiry could be satisfied. Bilan alleges that he sustained two blows: first someone hit him on his lower back, near his hip, and then someone struck him on the shoulder. (Compl. at 5; Bilan Tr. at 49-50). Other courts have considered the degree and type of force allegedly used against Bilan in the prison context to be *de minimis*. *See, e.g.*, *Show v. Patterson*, 955 F. Supp. 182, 192-193 (S.D.N.Y. 1997) (finding alleged force was *de minimis* when correction officer pushed the plaintiff "against the wall or from one wall to another with his hands and with no weapons"); *see also Candelaria v. Coughlin*, 787 F. Supp. 368, 374 (S.D.N.Y. 1992) (finding no Eighth Amendment violation when plaintiff alleged correction officer "pushed his fist against [plaintiff's] neck so that [he] couldn't move and [he] was losing [his] breath because of the pressure [the officer] was applying" when plaintiff refused to remove a string around his neck which held his identification card).

13

force analysis when the plaintiff was not the force's intended object," and that "the Second

Circuit has not addressed the specific circumstance of one inmate being injured by bad-faith

force directed at another . . . ." *Id.* at *5, 8. However, the *Santos* court found that "the Ninth

Circuit analyzed that exact scenario in *Robins v. Meacham*, 60 F.3d 1436, 1441 (9th Cir. 1995)."

*Id* at  *8. Following the Ninth Circuit's analysis in *Robins*, the court in *Santos* not only assessed

the force used against the plaintiff, but also looked at whether the defendant acted "maliciously

and sadistically" as to the force's intended target. *See Santos*, 2010 WL 1142066, at *8 (quoting

*Robins*, 60 F.3d at 1441).  The court in *Santos* found that the correction officer-defendant's

alleged actions–intentionally spraying a fire extinguisher at a prisoner even though there was no

fire and no apparent security threat–did not have a readily apparent penological purpose.  *Id.*

Thus, following the reasoning in *Robins*, the *Santos* court denied a motion to dismiss and

allowed the plaintiff to proceed with his excessive force claim even though he was not the

intended target, and his injuries could be viewed as unintentional.  *Id.* at *11.

     According to Bilan, the struggle between the non-party inmate and an unidentified

correction officer started when the prisoner would not cooperate with a search, but it eventually

escalated and other correction officers "jump[ed] on" the unidentified inmate and started "hitting

him." (Bilan Tr. at 50). "Infliction of pain that is totally without penological justification is per

se malicious." *Santos*, 2010 WL 1142066, at *8 (quoting *Ruffino v. Gomez*, No. 3:05 CV 1209

(JCH), 2006 WL 3248570, at *6 (D. Conn. Nov. 8, 2006)). Thus, Bilan's allegations could

*potentially* state a claim for excessive force if he was injured while officers were trying to use

excessive force against the non-party inmate. *See Santos*, 2010 WL 1142066, at *7; *Robins*, 60

F.3d at 1441.

     However, the motion presented here does not require an assessment of the pleadings, but

14

rather is one for summary judgment. Given the posture of the case, Bilan has failed to sufficiently develop the record with regard to the force used against the non-party inmate to survive such a motion. It is well-settled that "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Ketzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). Moreover, Bilan has not identified any admissible evidence from which a jury could conclude that Fernandez acted maliciously towards the non-party inmate. Because Bilan does not provide any evidence that Fernandez acted with a sufficiently culpable state of mind, no reasonable jury could conclude that Bilan has fulfilled the subjective prong of the excessive force analysis.

In sum, the Court recommends that summary judgment be granted as to Bilan's excessive force claim against Fernandez because Bilan has not presented any evidence to satisfy the subjective component of an excessive force claim, nor has he offered evidence to support Fernandez's personal involvement.

## C.      Deliberate Indifference Claim

### 1.      Applicable Standards

"To establish an Eighth Amendment violation arising out of inadequate medical treatment, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on a deliberate indifference claim, a plaintiff must satisfy both an objective and subjective element. *Smolen v. Fischer*, No. 12 Civ. 1856 (PAC) (AJP), 2012 WL 3609089, at *4 (S.D.N.Y Aug. 23, 2012) (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d

Cir. 1996)).[9]

In assessing the objective element, a court must determine "whether the prisoner was actually deprived of adequate medical care," and also "whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (citation omitted). The Second Circuit has held that "the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson*, 412 F.3d at 403 (citing *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)). However, this standard also encompasses some "less serious denials [of medical attention] which cause or perpetuate pain." *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (quoting *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977)).

To meet the subjective element, the prisoner must show that the defendant acted with "a sufficiently culpable state of mind," *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citing *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)), which "'is the equivalent of criminal recklessness.'" *Jones*, 2013 WL 3214616, at *1 (quoting *Hathaway*, 99 F.3d at 553). A "defendant acts with deliberate indifference only if he 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hall v. New York*, 476 F. App'x 474, 477 (2d Cir. 2012) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Thus, prison officials will not be liable under Section 1983 for "a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a

---

[9] As with claims for excessive force, "'[c]laims for deliberate indifference to a serious medical condition . . . should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment.'" *Jones v. Vives*, No. 12-1053-cv, 2013 WL 3214616, at *1 n.3 (2d Cir. June 27, 2013) (quoting *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009)).

mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless[.]" *Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000) (citing *Estelle*, 429 U.S. at 105-06).

2.   Plaintiff Has Not Identified Evidence to Establish That Defendants Were Deliberately Indifferent to His Medical Needs

Bilan has not alleged that defendants were deliberately indifferent to his medical needs on the day of the incident. (*See* Pl. Mem. at 8) ("Plaintiff would contend that . . . his immediate medical needs were met by him being removed by stretcher . . . ."). However, he argues that "his long term needs were in fact not met." *Id.* Specifically, he contends that he did not receive adequate care for his back problems. (Pl. 56.1 ¶12; Bilan Tr. at 81, 87).

Bilan's claim of deliberate indifference cannot survive summary judgment because he has failed to allege the personal involvement of any defendant. The named defendants are prison officials, not doctors, and they either had no alleged role in Bilan's medical care (*e.g.*, in the case of Warden Davis) or their role ended once Bilan was transported to the prison clinic (*e.g.*, in the case of Fernandez, McKenzie, and Aikhuele). Accordingly, Bilan has failed to meet the basic requirements for relief under § 1983. *See, e.g., Green v. McLaughlin*, 480 Fed. App'x 44, 47 (2d Cir. 2012) (dismissing claim of deliberate indifference to medical needs where plaintiff brought claims against prison official who had no role in alleged deprivation of care) (citing *Farid v. Ellen*, 593 F.3d 233, 244 (2d Cir. 2010)).

Moreover, even if Bilan had identified evidence suggesting the personal involvement of the defendants, his deliberate indifference claim with regard to treatment for his back would still not survive. Bilan contends that he has received several different diagnoses from different doctors, some of which are conflicting, and not all of which suggest that he requires back surgery. In the Second Circuit, it is well-established that in the prison context, "mere

17

disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703. "[D]eliberate indifference [will not] be found when an inmate simply prefers an alternative treatment or feels that he did not get the level of medical attention that he desired." *Cherry v. Edwards*, No. 01 Civ. 7886 (FM), 2005 WL 107095, at *8 (S.D.N.Y. Jan. 18, 2005) (citation omitted), *aff'd* 155 Fed. App'x 529 (2d Cir. 2005). Given the disagreement among doctors as to the appropriate treatment for Bilan, he has not demonstrated that the alleged lack of treatment could possibly rise to the level of criminal recklessness.

Finally, Bilan alleges for the first time in his opposition papers that the defendants "failed to reasonably accommodate [him] by placing him in a cell on a lower floor despite a letter from a [d]octor requesting that accommodation." (Pl. Mem. at 8). In addition to being untimely (and an improper attempt to effectively amend his Complaint), Bilan does not cite to any evidence that the defendants were personally involved in his cell assignment, or that they were even aware of his need for a cell on a lower floor. Because Bilan does not fulfill the constitutional requirement of personal involvement, and has not otherwise presented evidence to support it, summary judgment is appropriate as to his deliberate indifference claim.

**D.    Retaliation Claim**

Defendants argue that Bilan's retaliation claim should be dismissed as abandoned. (Defs. Reply Mem. at 2.) The Court agrees. "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003). Moreover, a district court "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Lipton v. Cnty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2005).

Here, Bilan asserts in his Complaint that the defendants changed his housing assignment—sending him to the "Crypts Gang House"—in order to retaliate against him for filing an incident report (and refusing to change the report after correction officers asked him to do so). (*See* Compl. at 7). In moving for summary judgment, Defendants made several arguments as to why the claim should be dismissed, including that Bilan has failed to allege any injuries arising from the claim, that there is no protectable constitutional interest in remaining at a particular facility, and that his Complaint is "too tenuous and conclusory to state a plausible claim for retaliation." (Defs. Mem. at 14).

Bilan fails to address any of Defendants' arguments. His memorandum of law in opposition to Defendants' motion only mentions the retaliation claim in a single, general reference in the introductory paragraph. (*See* Pl. Mem. at 3-4 ("Plaintiff alleges that the defendants violated his First, Fourth, and Fourteenth Amendment rights by subjecting him to excessive force, indifferen[ce] to his medical needs and retaliation against [him] by changing his housing needs as well as a refusal to place the Plaintiff on a lower floor to accommodate his medical condition. Plaintiff believes that each of his claims is sustainable and therefore the Defendants' motion for summary judgment should be denied.")). In his Rule 56.1 statement, Bilan contends that he "believes that he can prove that various corrections officers retaliated against him by moving him to a different location soon after the incident." (Pl. Rule 56.1 Statement ¶ 15). However, "[s]tatements in an affidavit or Rule 56.1 statement are inappropriate if they are . . . conclusory or argumentative, or do not cite to supporting evidence." *Epstein v. Kemper Ins. Cos.*, 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002) (citing Fed. R. Civ. P. 56(e); Local Rule 56.1).

19

In reviewing Bilan's retaliation claim, the Court is also mindful that "[v]irtually every prisoner can assert such a claim as to every decision which he or she dislikes." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). Indeed, while the "First Amendment protects prisoners from retaliation for filing grievances[,]" *Quezada v. Ercole*, No. 09 Civ. 2832 (DLC), 2011 WL 3251811, at *5 (S.D.N.Y. Jul. 29, 2011) (citations omitted), the Court recognizes "the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citation omitted). Moreover, courts should carefully scrutinize an inmate's claims of retaliation because such allegations "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Hodges v. Wright,* No. 10 Civ. 0531 (GLS) (GHL), 2011 WL 5554866, at *9 (N.D.N.Y. Sept. 29, 2011) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)), Report and Recommendation, *adopted by* 2011 WL 5554880 (N.D.N.Y. Nov. 15, 2011). Therefore, courts reviewing an inmate's retaliation claims should do so "with skepticism and particular care." *Colon*, 58 F.3d at 872 (citation omitted).

However, because Bilan has not addressed Defendants' arguments with regard to the retaliation claim, nor has he provided the Court with any evidentiary support for the claim, the Court recommends that summary judgment be granted as to Bilan's retaliation claim.

**E.     Dismissal of State Law Claims**

Because I recommend that the Court dismiss all of Bilan's federal claims, I also recommend that the Court decline to exercise supplemental jurisdiction over any remaining state law claims. *See, e.g.*, *Lopez v. City of New York*, No. 05 Civ. 10321 (NRB), 2009 WL 229956, at

20

*14 (S.D.N.Y. Jan. 30, 2009).[10] "The district court may decline to exercise supplemental jurisdiction . . . [if] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see, e.g., Giordano v. City of New York*, 274 F.3d 740, 755 (2d Cir. 2001) (instructing district court to dismiss pendent state claims without prejudice "so that the state courts may adjudicate those claims in their entirety if the plaintiff chooses to pursue them in those courts"); *Locantore v. Hunt*, 775 F. Supp. 2d 680, 689 (S.D.N.Y. 2011) (dismissal of pendent state-law claims without prejudice appropriate where plaintiff's federal claims dismissed).  Since all of the federal claims should be dismissed, and there is "no compelling reason to retain jurisdiction over [the] state law claims," *Adams-Shango v. New York City Dep't of Educ.*, No. 11 Civ. 4619 (RJS), 2012 WL 3834668, at *5 (S.D.N.Y. Aug. 22, 2012), the remaining state law claims should be dismissed as well.[11]

## III.  CONCLUSION

For the reasons stated herein, the Court should grant summary judgment and dismiss the Complaint.

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the

---

[10] It is not entirely clear from Bilan's pleadings what his state claims are as they are not specifically identified.

[11] Defendants also argue that Bilan's state law claims should be dismissed because he failed to file a notice of claim within 90 days after the incident giving rise to the claim, as required by state law. (Defs. Mem. at 18).  The Court need not reach this alternative basis for dismissal.

Honorable Richard J. Sullivan and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Sullivan.  **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: New York, New York
      July 31, 2013

JAMES L. COTT
United States Magistrate Judge